**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOWARD MICHAEL DEAN, II, | ) Case No.: 1:17-cv-01297-BAM |
| Plaintiff, | ) |
| v. | ) **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**INTRODUCTION**

Plaintiff Howard Michael Dean, II ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DBI") under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 7, 8.)

1

and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

On February 11, 2014, Plaintiff filed an application for disability insurance benefits. AR 17.[2] Plaintiff alleged that he became disabled on October 12, 2011, due to depression, anxiety, back pain, bells palsy, plantar fasciitis, meniscus tear, arthritis, and obesity. AR 120, 217. Plaintiff's application was denied initially and on reconsideration. AR 120-23, 128-32. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Kevin Gill held a hearing on April 27, 2016, and issued an order denying benefits on August 23, 2016. AR 14-30, 36-68. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### **Hearing Testimony**

The ALJ held a hearing on April 27, 2016, in Fresno, California. Plaintiff appeared with his attorney, Robert Ishikawa. Impartial Vocational Expert ("VE") Judith Najarian also appeared. AR 38.

In response to questioning by the ALJ, Plaintiff testified that he has a driver's license and will drive to doctor's appointments. When asked about limits on his driving, Plaintiff reported that he has road rage, which is almost constant when he drives. It is not hard for him "to get into confrontations on the street, trying to initiate drag races, stupid stuff" when he gets angry at people. AR 41.

Plaintiff reported that he last worked in January 2012 as a cement mixer truck driver. He was fired from that job because he delivered a load of concrete to the wrong address and employees were frightened of his anger. Plaintiff also worked as a window tech, computer tech and concrete cutter. AR 42-44.

When asked what prevented him from working, Plaintiff testified that he does not have any drive or motivation, with wanting to die or not be here anymore. He also hears things and sees things that are not there.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

When asked about pain, Plaintiff testified that he has issues with his back, knees, ankles and left hand. He is not taking pain medications because of his psychiatric medications, which include Prozac, Seroquel XR and Ambien. However, he does take Gabapentin for his aches and pains, along with over the counter Naproxen. AR 45-49.

When asked about his mental health treatment, Plaintiff reported being in individual therapy. He also attended group therapy one time. He sees his psychiatrist once a month, and his therapist four to eight times a month. AR 50-51.

When asked about his abilities, Plaintiff testified that he could lift a gallon of milk and could lift 25 pounds. Bending is difficult and he has problems getting in and out of a vehicle. He has a handicapped placard because of his back and knees. He cannot stand for a long time in one spot. He can walk about five minutes. He also has problems with his memory, such as recalling dates, times and instructions. He watches quite a bit of TV, like the History Channel and Discovery Channel. He has problems following an hour-long show, and he will sometimes fall asleep or wander off. AR 51-53.

When asked about his anger problems, Plaintiff testified that he tries not to go out without his wife or someone with him because he does stupid stuff on the road. Usually, he will have his wife or daughter-in-law drive. He does not like taking the kids to school because he gets in confrontations trying to drop them off. AR 53-54.

When asked about a typical day, Plaintiff reported that he will watch TV, be on Facebook or plain a mindless video game. If he has the energy, he will load the dishwasher or throw a load of clothes through the washing machine. He spends a lot of the day lying down on the couch or in the recliner. He is not in charge of any household chores and he does not exercise. He will grocery shop with his wife or daughter-in-law, but not by himself. He also does not keep money in his bank account, and his wife pays the bills. AR 54-55.

In response to questions from his attorney, Plaintiff testified that he had trouble with his past jobs. He had attendance issues and anger issues. He could not get to work on time and would call in sick because he had to drive. Plaintiff also testified that he currently has problems getting out of bed. He isolates most of the time, and his wife tries to draw him out. With his anger issues, he has punched

holes in the walls and broken furniture. He has been trying to deal with his anger issues through therapy. He attends therapy twice a week. He has suicidal ideations, and although he does not have plans, he has ideas. He also has auditory or visual hallucinations every day, which affect his ability to concentrate. His wife looks after him and does not leave him unattended very much. AR 55-60.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Judith Najarian. The VE classified Plaintiff's past work as concrete mixing truck driver, material handler, window repairer, electronics mechanic, and construction worker II. AR 60-63. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and past jobs who was limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently, and sit, stand, walk six hours in an eight-hour day. This individual also occasionally could do right foot controls, frequent climbing of ramps and stairs, occasional climbing of ladders, ropes and scaffolds, frequent balancing and stooping and occasional kneeling, crouching and crawling. This individual also was limited to occasional exposure to dust, odors, fumes and pulmonary irritants. The individual was further limited to performing simple, routine tasks, frequent interactions with supervisors and interaction with coworkers and the public only on a brief, casual basis, no more than 10 percent of the time. The individual also was limited to simple, work related decisions. The VE testified that this individual could not perform any of Plaintiff's past jobs, but there was other work this individual could perform, such as marker, router, and checker I in a warehouse setting. AR 63-65.

For the second hypothetical, the ALJ asked the VE to consider the same individual from hypothetical one who was further limited to only occasional interaction with supervisors. The VE testified that this hypothetical individual could perform the other work described once the individual learned the job past the training time. During the training time, there may be more than occasional contact with the supervisor. AR 65.

For the third hypothetical, the ALJ asked the VE to consider the same person from hypothetical two, but in addition to normal breaks, this person would be off task 15 percent of the time in an 8-hour workday. The VE testified that this person could not perform any work. AR 65.

For the fourth hypothetical, the ALJ asked the VE to consider the same person from hypothetical two with an additional limitation that the person would have two or more angry outbursts at work each month. The VE testified that this person would not keep a job. AR 65-66.

For the fifth hypothetical, the ALJ asked the VE to consider the same person from hypothetical two, but this person would be absent from work two days a month. The VE testified that this person could not perform any work and would not keep the job. AR 66.

For the sixth hypothetical, Plaintiff's attorney asked the VE to consider a person who would be off task 10 percent of an eight-hour workday. The VE testified that this person would not keep a job. AR 67.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 14-30. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 5, 2012, his alleged onset date. The ALJ identified intermittent explosive disorder, depressive disorder not otherwise specified, degenerative disc disease of the lumbar spine, status-post right knee arthroscopy, degenerative arthritis of the right knee, obesity and asthma as severe impairments. AR 19-20. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 20-22. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that he was limited to lifting and carrying 10 pounds frequently and 20 pounds occasionally, sitting 6 hours, standing 6 hours, and walking 6 hours, could push/pull as much as he could lift and carry, limited to right occasional foot control, limited to climbing ramps or stairs, balancing and stooping frequently, limited to climbing ladders, ropes or scaffolds, kneeling, crouching and crawling occasionally, limited to occasional exposure to dust, odors, fumes, and pulmonary irritants, limited to performing simple, routine tasks, limited to occasional interactions with supervisors, limited to interaction with coworkers

and the public only on a brief, casual basis, no more than 10% of the time, and limited to simple work-related decisions. AR 22-28. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as marker, router, and checker I. AR 28-30. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 30.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ accepted testimony from the VE that would preclude Plaintiff from successfully completing the training period for the work identified at step 5 of the sequential evaluation process. Plaintiff also argues that the ALJ erred in evaluating Plaintiff's social limitations in formulating the RFC.

## **DISCUSSION**[3]

### A. VE Testimony - Training Period

Plaintiff argues that because the ALJ accepted VE testimony that precludes completing the successful training for the other work identified in the national economy, then the Court should reverse the decision and award benefits. (Doc. No. 13 at 6-8.) In other words, Plaintiff contends reversal is warranted because if the most that he can tolerate is occasional interaction with supervisors, then he cannot complete the training time for the jobs identified at step five.

At step five of the sequential evaluation, the ALJ relied on VE testimony that a person with Plaintiff's RFC could perform the requirements of representative occupations such as marker (DOT 209.587-034), router (DOT 222.587-038) and checker 1 (DOT 222.687-010). AR 30. The VE testified that such a person, limited to only occasional interaction with supervisors, could perform those jobs "once one learns the job past the training time." AR 65. The VE further testified that "during the training timeframe, there may be more than occasional contact with the supervisor because there's a training timeframe. But once we're past that, then it wouldn't be more than occasional to do those jobs." *Id.*

In seeking reversal, Plaintiff claims that the VE testified that "an individual with [a limitation to occasional interaction with supervisors] could not get past the training time either for some significant portion of the jobs or all of them." (Doc. No. 13 at 7.) However, this is not a proper characterization of the VE's testimony. The VE did not testify that someone with a limitation to

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

occasional interaction with supervisors could not get past the training time for the representative jobs. Rather, the VE suggested that during the training time, there *may be* more than occasional contact with a supervisor.

Plaintiff next relies on the Program Operational Manual System ("POMS") DI 25020.010 ¶ B.3 to assert that "the Commissioner describes mental abilities critical to performing unskilled work as accepting instructions and responding appropriately to criticism from supervisors." (Doc. No. 13 at 7.) Plaintiff argues that the VE "recognized this concept as applicable at least during the period of training, that training requires more than occasional interaction with supervisors because that person must accept instructions and respond appropriately to criticism during the training process." (*Id.*) Plaintiff's argument is unavailing.

There is no obvious corollary between the VE's testimony regarding interactions with supervisors and Plaintiff's ability to accept instructions or respond appropriately to criticism from supervisors, nor is there an obvious conflict between Plaintiff's RFC for occasional interactions with supervisors and the VE's testimony that a person with such a limitation could perform other work. The ALJ did not find that Plaintiff was unable to accept instructions or that he was unable to respond appropriately to criticism from supervisors. Instead, the ALJ limited Plaintiff to occasional interactions with supervisors to accommodate Plaintiff's moderate social limitations. AR 22. Critically, Plaintiff has not demonstrated that he is unable to tolerate criticism from supervisors or accept instructions.

Moreover, the representative jobs of marker (DOT 209.587-034), router (DOT 222.587-038) and checker I (DOT 222.687-010) are unskilled jobs all of which specify in the Dictionary of Occupation Titles ("DOT") that "Taking Instructions-Helping" is not a significant part of the job. *See* Marker, DICOT 209.587-034 (G.P.O.), 1991 WL 671802; Router, DICOT 222.587-038 (G.P.O.), 1991 WL 672123; and Checker I, DICOT 222.687-010 (G.P.O.), 1991 WL 672130. Indeed, there is no indication that the training period for any of these unskilled jobs would require more than occasional interactions with supervisors. *See*, *e.g.*, *Burtenshaw v. Berryhill*, No. 5:16-CV-02243-GJS, 2018 WL 550590, at *6-*7 (C.D. Cal. Jan. 23, 2018) (concluding that limitation to occasional, superficial and non-intense interactions with coworkers and supervisors did not conflict with mental

demands for unskilled work in POMS DI 25020.010 ¶ B.3); *Losoya v. Berryhill*, No. CV 16-8967-PLA, 2017 WL 4564701, at *5 (C.D. Cal. Oct. 11, 2017) (noting that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people").

Further, the POMS is not binding on either the ALJ or on a reviewing court. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010); *Lowery v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (holding that POMS is an internal procedure manual that does not impose judicially enforceable duties on an ALJ).

For these reasons, the Court does not find reversible error at step five of the sequential evaluation.

### B. Mental RFC - Social Interactions

Plaintiff argues that the ALJ erred by failing to state a valid and reasonable basis for rejecting the social interaction limitations specifically articulated by the state agency physicians, Dr. H. Amado and Dr. D. Funkenstein. (Doc. No. 13 at 10.)

On March 26, 2014, Dr. Amado completed a Mental Residual Functional Capacity Assessment. AR 90-92. With respect to social interaction limitations, Dr. Amado opined that Plaintiff was moderately limited in the ability to interact appropriately with the general public, in the ability to accept instructions and respond appropriately to criticism from supervisors and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 91. In narrative form, Dr. Amado explained, "due to anger issues and irritability best limited to nonpublic settings with superficial interactions with prospective coworkers and supervisors, but claimant retains appropriate social skills and is able to keep emotions in check." AR 91.

Similarly, on June 18, 2014, Dr. Funkenstein completed a Mental Residual Functional Capacity Assessment. AR 108-10. With respect to social interaction limitations, Dr. Funkenstein opined that Plaintiff was moderately limited in the ability to interact appropriately with the general public, in the ability to accept instructions and respond appropriately to criticism from supervisors and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 109. In narrative form, Dr. Funkenstein stated, "due to anger issues and irritability best

limited to nonpublic settings with superficial interactions with prospective coworkers and supervisors, but claimant retains appropriate social skills and is able to keep emotions in check." AR 110.

In evaluating these opinions, the ALJ reasoned as follows:

> As for the state agency psychological consultants, they found that the claimant's affective disorder was severe, resulting in moderate difficulties in activities of daily living, in social interaction, and in concentration, persistence, and pace. Thus, they limited the claimant to simple instructions on a consistent basis and nonpublic settings with superficial interactions with prospective coworkers and supervisors. I place great weight on their assessments, as the claimant's treatment has remained largely unchanged. He continues to receive medication and therapy, and, overall, he has improved with treatment.

AR 26.

Plaintiff argues that the ALJ erred by failing to explain why he rejected the state agency physicians' limitation of Plaintiff to superficial interactions and instead limited Plaintiff to only occasional interactions with supervisors. (Doc No. 13 at 10.) Plaintiff's argument is not persuasive.

The ALJ was not required to explain how he translated each relevant medical opinion into an RFC determination. *See Elkins v. Berryhill*, No. 5:17-cv-00248-KES, 2018 WL 294526, at *4 (C.D. Cal. Jan. 4, 2018) (noting that "while ALJs are required to give specific, legitimate reasons for rejecting relevant medical opinions, they are not required to explain how they translated each relevant medical opinion into an RFC determination."). An "ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." *Holcomb v. Comm'r Soc. Sec.*, No. 2:17-cv-02268-KJM-CKD, 2019 WL 176266, at *4 (E.D. Cal. Jan. 11, 2019) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)). Rather, the ALJ may incorporate the opinions of a physician by assessing RFC limitations entirely consistent with, but not identical to limitations assessed by the physician. *See Turner*, 613 F.3d at 1222-23. Moreover, an ALJ may reasonably decline to adopt the opinion of a physician "offered as a *recommendation*, not an imperative." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (emphasis in original).

Here, the state agency physicians did not limit Plaintiff *only* to superficial interactions with supervisors and coworkers. Rather, these physicians recommended that Plaintiff was "*best* limited" to nonpublic settings with superficial interactions with prospective coworkers and supervisors. AR 91, 110 (emphasis added). And, while noting this "best" scenario, neither doctor indicated that this was

the *most* that Plaintiff could do, and both doctors expressly affirmed that Plaintiff "still retained appropriate social skills" and "was able to keep his emotions in check." *Id.* As noted above, the ALJ was not required to adopt the portion of the opinion offered as a recommendation. *Carmickle*, 533 F.3d 1165. Moreover, Plaintiff does not explain how the limitation to occasional contact with supervisors fails to account for the moderate limitations in social functioning identified by the state agency physicians, who correspondingly opined that Plaintiff retained appropriate social skills.

Even assuming that the state agency physicians' proposed restriction to superficial interactions was significant and probative, the ALJ provided a reasoned explanation for omitting that restriction from Plaintiff's RFC.[4] In evaluating the medical evidence to determine Plaintiff's mental RFC, the ALJ found Plaintiff "limited to simple, routine tasks involving only simple-work related decisions because of his depressive symptoms . . . [and] that, because of his intermittent explosive disorder, i.e., issues with anger, he is limited to only brief and casual interaction no more than 10% of the workday with coworkers and the public and to only occasional interaction with a supervisor." AR 25. The ALJ then tacitly rejected the state agency physicians' opinions regarding superficial social interactions with supervisors by expressly rejecting "any other [mental] residual functional capacity limits" after "considering the improvements the [plaintiff] has realized with treatment over time." AR 25. Plaintiff has not challenged the ALJ's findings with respect to improvement of his mental condition with treatment over time.

Accordingly, the Court finds that the ALJ did not err in his evaluation of the state agency physicians' opinion and his determination of Plaintiff's mental RFC.

///

---

[4] At least one court in this circuit has questioned whether the difference between occasional interactions and superficial interaction is significant or probative in evaluating a physician's opinion. *See*, *e.g.*, *Marks v. Berryhill*, No. 216CV03034APGNJK, 2018 WL 702835, at *6 (D. Nev. Jan. 7, 2018), report and recommendation adopted, No. 216CV03034APGNJK, 2018 WL 702888 (D. Nev. Feb. 2, 2018) ("Reasonable minds may differ as to whether or not occasional interactions are or are not necessarily superficial interactions. Nonetheless, the Court finds that the difference between an occasional interaction and a superficial interaction is not so great as to find that the ALJ's evaluation and explanation of Dr. Lark's opinion is questionable.").

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Howard Michael Dean, II.

IT IS SO ORDERED.

Dated: **March 13, 2019**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE